247 S.C. 137 (1966)
146 S.E.2d 160
SOUTH CAROLINA STATE HIGHWAY DEPARTMENT, Respondent,
v.
PARKER WATER AND SEWER SUB-DISTRICT, Appellant.
18443
Supreme Court of South Carolina.
January 4, 1966.
*138 Messrs. Leatherwood, Walker, Todd & Mann, of Greenville, for Appellant.
*139 Messrs. Daniel R. McLeod, Attorney General, and Victor S. Evans and William L. Pope, Assistant Attorneys General, of Columbia, for Respondent.
January 4, 1966.
LEWIS, Justice.
The sole question for determination in this appeal is whether the defendant, a political subdivision and owner of water and sewer lines placed in an existing right of way of a public highway, is required to pay, in the absence of agreement thereabout, the cost of relocating such facilities when the relocation is necessitated by highway improvements.
*140 The plaintiff, South Carolina State Highway Department, is an agency of the State and charged with the duty of constructing and maintaining the State system of highways. The defendant, Parker Water and Sewer Sub-District, is a body politic and corporate, created by Act of the General Assembly and charged with the duty of providing, among other public functions, a public water system, sewer system and fire protection for the Sub-District, with the power to levy taxes and issue bonds for such purposes.
The agreed statement of facts, upon which the issues were submitted to the lower court, shows that in the early part of 1963, the plaintiff undertook the construction of a State secondary road in Greenville County, designated as Road S-1316. The construction was done as a Federal Aid Secondary Project, with the Federal government bearing 50% of the cost. This road included a section of Pickens Street, which was a public street located in a residential section known as "Riverside". Pickens Street was constructed by the developers of "Riverside" about 1906 or 1907. Shortly thereafter Greenville County took over the maintenance of the street, and it continued as a county road until February 23, 1963, when it became a part of the State Highway System.
In 1934 or 1935, while Pickens Street was a county road, the defendant constructed water and sewer lines in "Riverside" development, placing some of its utility lines, apparently with permission of the county, within the existing right of way of Pickens Street and beneath the traveled portion of the roadway, where they have been since maintained by the defendant. These utility lines have been operated and maintained by the defendant, pursuant to the public duties imposed upon it by statute, for the health, safety and welfare of the residents of the Sub-District.
The portion of the right of way of Pickens Street, within which the defendant placed its utility lines, was subsequently taken into the State Highway System and is embraced within the construction undertaken by the plaintiff. This construction *141 necessitated the relocation of the utility lines of the defendant lying within the highway right of way; and the plaintiff demanded that the defendant bear the cost of such relocation, which the defendant refused to do.
At no time was there any agreement between the defendant and Greenville County, while Pickens Street was a county road, nor with plaintiff, since the street became a part of the State Highway System, as to which would bear the cost of relocating defendant's utility lines lying within the road right of way, if such relocation became necessary by reason of the construction or maintenance of the public road.
As a result of the disagreement over which should pay the cost of relocating the defendant's utility lines, the parties stipulated that the cost of such relocation would be paid initially by the plaintiff, with the ultimate liability therefor to be determined by the courts. The cost of relocating the lines, admittedly amounted to $8,796.74, which has been paid by the plaintiff. This action was then brought to determine if plaintiff was entitled to reimbursement from the defendant in the foregoing amount. The lower court held that the cost of relocating the utility lines involved should be paid by the defendant and entered judgment accordingly, from which the defendant has appealed.
The question here, as to liability for the cost of relocating facilities placed by a utility within an existing right of way, is one of first impression in this State.
Several states have enacted statutes permitting reimbursement for the cost of relocating such facilities. These statutes have been the subject of litigation in a number of cases, representative of which are the following cited by the defendant: Jones v. Burns, Mont., 138 Mont. 268, 357 P. (2d) 22; Pack v. Southern Bell Telephone & Telegraph, Tenn., 387 S.W. (2d) 789; State Road Commission of Utah v. Utah Power & Light Co., Utah, 10 Utah (2d) 333, 353 P. (2d) 171; Edge v. Price, Iowa, 253 Iowa 710, 113 *142 N.W. (2d) 755; State Highway Department v. Delaware Power & Light Co., 39 Del. Ch. 467, 167 A. (2d) 27. A collection of such cases may be found in the Annotation in 75 A.L.R. (2d) 419.
The statutes upon the subject were apparently adopted by the several states to implement the Federal-Aid Highway Act. The Federal statute contains a provision for reimbursement of any state which has reimbursed a public utility for the cost of relocating its facilities because of Federal-aid highway construction, in the same proportion as Federal funds expended on the particular project. 23 U.S.C.A., Section 123. This section contains a provision however which states: "Federal funds shall not be used to reimburse the State under this section when the payment to the utility violates the law of the State or violates a legal contract between the utility and the State."
The present highway construction is a Federal-aid project. The fact however that Federal funds may be available to aid in the reimbursement of defendant for the cost of relocating its lines has no effect upon the determination of the liability of the state for such costs. The availability of Federal funds is specifically conditioned upon liability for such costs under State law. South Carolina has not enacted a statute upon the subject and common law rules apply.
When the defendant constructed the lines in question, they were placed within the existing right of way of a public road. It is fundamental to the solution of the present problem that the public road existed for the benefit of the general public and was subject to the police power of the State, in which the ultimate authority with respect to the control and management of all streets and highways is placed. As stated in Leonard v. Talbert, 22 S.C. 79, 71 S.E. (2d) 603, quoting from 25 Am. Jur., Highways, Section 254: "Subject to constitutional limitations, the State has absolute control of the highways, including streets, within its borders, even though the fee is in the municipality. Such power of supervision and control may be exercised *143 directly by the Legislature or may be delegated by it to subordinate or locate governmental agencies, such as municipalities and quasi-municipalities, * * * and any such delegation may be revoked or changed at will."
Public policy requires that highways be maintained for the general public and primarily for the passage of travel thereover. When Greenville County and, subsequently, the plaintiff assumed jurisdiction of the public road in question, the right and duty arose to maintain and improve it so as to make the road serve the primary purpose for which it was intended; and any other use granted of the highway is at all times subject to the exercise by the State of this paramount right. This principle was recognized in Summons v. City of Beaufort, 225 S.C. 490, 83 S.E. (2d) 153, wherein it was stated: "It is fundamental that any use of a highway or street for a purpose other than one for which it was primarily established is always subject to the police power. Any right granted with respect thereto is at all times subordinate to the superior rights of the public."
The defendant was simply granted permission to place its lines within the highway right of way and was charged with knowledge that in the maintenance and improvement of the road it might be required to relocate its facilities. City of San Antonio v. Bexar Metropolitan District, Tex. Civ. App., 309 S.W. (2d) 491.
In accord with the foregoing principles, it appears well settled that, in the absence of a statute or agreement to the contrary, the cost of relocating utility lines placed in the right of way of public streets or highways must be paid by the owner of the utility when the relocation is necessitated by road maintenance or construction. 25 Am. Jur., Highways, Section 182; New Orleans Gaslight Co. v. Drainage Commission of New Orleans, 197 U.S. 453, 25 S.Ct. 471, 49 L.Ed. 831; Opinion of the Justices, 101 N. H. 527, 132 A. (2d) 613.
The defendant contends however that, since it is a political subdivision and derives its income through taxes, the foregoing *144 rule does not apply to it. No sound reason appears to draw such distinction. The permissive construction by the defendant of its utility lines within the right of way did not in any way subordinate the primary purpose of the highways or the right of the State to exercise the police power in furtherance of such primary purpose. The obligation of the State with reference to the use of the highways by the defendant, under the facts of this case, was no different than that owed any other utility under similar circumstances. Such use was subservient to the reasonable exercise of the paramount right of the State to reconstruct the road to meet the changing needs of highway traffic. Public Water Supply District v. State Highway Commission, Mo., 244 S.W. (2d) 4; City of San Antonio v. Bexar Metropolitan Water District, supra, 309 S.W. (2d) 491; State ex rel. State Highway Comm. v. Town of Grants, 66 N.M. 355, 348 P. (2d) 274.
The lower court correctly held that the defendant must bear the cost of relocating its utility lines situated within the highway right of way.
Affirmed.
MOSS, BUSSEY and BRAILSFORD, JJ., concur.
TAYLOR, C.J., did not participate.